Youssef H. Hammoud (SBN: 321934)
**THE CREDIT ATTORNEY, INC.**
601 N Parkcenter Drive Suite 202
Santa Ana, CA 92705
T: (949) 301-9692
F: (949) 301-9693
E: yhammoud@thecreditattorney.com

*Attorney for Plaintiff,*
*Moua Tao Cha*

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MOUA TAO CHA<br><br>          Plaintiff,<br><br>          v.<br><br>EQUIFAX INFORMATION SERVICES LLC, TRANS UNION LLC, CAPITAL ONE, N.A.<br>          Defendant. | Case No.: 2:25-cv-2056<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1.  FCRA, 15 U.S.C. §1681 *et seq.* |

Plaintiff Moua Tao Cha ("Plaintiff"), by and through the undersigned

counsel, brings this action on an individual basis, against Equifax Information

Services LLC ("Equifax"), Trans Union LLC ("Trans Union"), and Capital One,

N.A. (Capital One), for actual, statutory, and punitive damages and costs, and

attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15

COMPLAINT AND DEMAND FOR JURY TRIAL

U.S.C. §§ 1681, *et. seq.*, arising out of Defendants' mixing Plaintiff's credit file with another consumer.

## **INTRODUCTION**

1. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2. However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, Defendant acknowledges this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.      "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

7.      Congress made the following findings when it enacted the FCRA in 1970:

> i.      The banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
>
> ii.     An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.
>
> iii.    Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

iv.    There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).

8.    Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

9.    The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

4

10. Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et. seq.*, ("FCRA"), the federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

11. The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

12. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S. C. § 1681(a)(4).

13. The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and

modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

14.   A recurring and *known* issue within the credit reporting industry is the creation of "mixed files."

15.   A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

16.   "Mixed files" create a false description and representation of a consumer's credit history.

17.   The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is subject to that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

18.   Mixed files are not a new phenomenon. CRAs have been on notice of the existence of mixed files, and the fact that their procedures for creating credit files, including their matching algorithms, are prone to frequently cause mixed files, for over thirty (30) years. *See Thompson v. San Antonia Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

19.   More recently, the Defendant CRAs (and non-party Experian) have been the subject of numerous state attorney general actions relating to their mixed file problem.

20.     For example, in 2015, the New York Attorney General filed charges and settled claims with Equifax and Trans Union over mixed files.  *See In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC.*

21.     Notwithstanding these notices and being subject to repeated enforcement actions, mixed files continue to occur despite consumers' unique personal identifying information, such as Social Security numbers, date of birth, and addresses.

22.     Another consequence of mixed files is the resulting disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge or consent, or both. This occurs when a consumer's file is mixed with that of another consumer, and either of those consumers applies for credit, housing, insurance, or employment, and CRAs sell information pertaining to one consumer in response to the application of the other.

23.     Defendants Equifax and Trans Union have been sued thousands of times wherein an allegation was made that they violated the FCRA. Moreover, they are sued, at a minimum, hundreds of times each year wherein an allegation is made that they mixed a consumer's credit files with that of another consumer.

24.     FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed credit file.

25.     For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case NO. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them despite Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000.00 in actual damages and $5,000,000.00 in punitive damages. Despite the verdict, Equifax and Trans Union continue to mix consumers' credit files with other consumers' credit files.

26.     In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC,* Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $219,000.00 in actual damages and $2,700,000.00 in punitive damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes. Despite the verdict, Equifax and Trans Union continue to mix consumers' credit files with other consumers' credit files.

27.     In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000.00 in actual damages and more than $18,000,000.00 in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Miller' numerous disputes. Despite the verdict, Equifax and Trans Union continue to mix consumers' credit files with other consumers' credit files.

28.     More recently, a jury assessed a $60 million dollar verdict against Trans Union for mixing innocent persons as terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone. *See Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part, rev'd in part sub nom. Ramirez v. TransUnion, LLC*, 951 F.3d 1008 (9th Cir. 20020). Despite the verdict, Equifax and Trans Union continue to mix consumers' credit files with other consumers' credit files.

29.     "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong evidence is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the defendant acted willfully. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

30.     No less than three federal Courts of Appeal have held a consumer reporting agencies violate 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when they mix a consumer's file with another consumer.

31.     Notably, the Federal Trade Commission has specifically warned consumer reporting agencies, including Equifax and Experian, to review their procedures when a mixed file occurs.

32.     Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

33.     Plaintiff's claims arise out of the Equifax and Trans Unions' blatantly inaccurate credit reporting, wherein they mixed and/or merged Plaintiff's credit files with that of another consumer.

34.     Accordingly, Plaintiff brings claims against Defendants Equifax and Trans Union for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and for failing to conduct a reasonable reinvestigation of the disputed information, in violation of 15 U.S.C. § 1681i.

35.     Plaintiff also brings this claim against Capital One for failing to conduct a reasonable investigation after being notified by Defendants Equifax and Trans Union of Plaintiff's dispute in violation of the FCRA, 15 U.S.C. § 1681s-2(b).

36.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from the Defendant for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## **PARTIES**

37.     Plaintiff is a natural person residing in Milwaukee, Wisconsin and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

38.     Defendant Equifax is a corporation with a principal place of business located in Atlanta, GA and can be served through its agent for service, Corporation Service Company, located at 33 East Main Street, Suite 610, Madison, WI 53703.

39.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

40.     Defendant Trans Union is a corporation with a principal place of business located in Chicago, IL and can be served through its agent for service, Corporation Service Company, located at 33 East Main Street, Suite 610, Madison, WI 53703.

41.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

42.     Defendant Capital One is a corporation with a principal place of business in McLean, VA and can be served through its agent for service, Corporation Service Company, located at 100 Shockoe Slip, 2nd Floor, Richmond, VA 23219.

## JURISDICTION AND VENUE

43.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C.

§ 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought

in any appropriate court of competent jurisdiction.

44.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)

because a substantial part of the events or omissions giving rise to Plaintiff's claims

occurred in this District.

## FACTS
### Summary of the Fair Credit Reporting Act

45.     The FCRA governs the conduct of consumer reporting agencies in an

effort to preserve the integrity of the consumer banking system and to protect the

rights of consumers to fairness and accuracy in the reporting of their credit

information.

46.     The FCRA was designed to protect consumers from the harmful effects

of inaccurate information reported in consumer reports (commonly referred to as

"credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit

reporting" and the "need to ensure that consumer reporting agencies exercise their

grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15

U.S.C. § 1681(a).

47.     Specifically, the statute was intended to ensure that "consumer reporting

agencies adopt reasonable procedures for meeting the needs of commerce for

consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

48.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

49.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

### CRAs' Processing of Credit Information

50.     Defendants Equifax and Trans Union regularly receives information from various sources around the country including banks (like Defendant Capital One), credit unions, automobile dealers, student loan providers, public information vendors, and others.

51.     These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

52.     Defendants Equifax and Trans Union collect information from thousands of furnishers.

53.     The process by which Defendants Equifax and Trans Union receive, sort, and store information is largely electronic.

54.     Furnishers report credit information to Equifax and Trans Union through the use of coded tapes that are transmitted to Equifax and Trans Union on a monthly basis through software known as Metro 2.

55.     Equifax and Trans Union take credit information reported by furnishers and create consumer credit files.

56.     Equifax and Trans Union maintain credit files on more than 200 million consumers.

57.     Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to within the industry as "tradelines").

**Equifax and Trans Unions' Mixed File Problem**

58.     Equifax and Trans Union know that different consumers have similar names.

59.     Equifax and Trans Union know that many consumers share the same and/or similar name with their family members.

60.     Equifax and Trans Union also know that family members with the same and/or similar name may also have the same home address.

61.     Equifax and Trans Union knows that some consumers are twins, who share the same date of birth.

62. Equifax and Trans Union know that twins can also share very similar social security numbers.

63. Equifax and Trans Union match tradelines and public records to a consumer credit file by comparing the information about the consumer associated with the tradeline or public record to the information they maintain about the consumer in the consumer's credit file or files.

64. Equifax and Trans Union accomplishes this matching of credit information to consumer credit files through the use of certain matching algorithms or database rules.

65. From time to time, Equifax and Trans Union's matching algorithms match information belonging to one consumer to the credit file of another consumer; resulting in what's commonly known in the credit reporting industry as a mixed or merged credit file.

66. Equifax and Trans Union's procedures for matching consumer information to a consumer report often cause the mixing of one consumer with another. Or worse yet, the merging of data pertaining to two different consumers into a single consumer file.

67. Another consequence of mixed files is the resulting disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge or consent, or both. This occurs when a consumer's file is mixed with that of another consumer, and either of those consumers apply for credit,

housing, insurance, or employment, and Equifax and Trans Union sell information pertaining to one consumer in response to the application of the other. This violates the consumers' privacy and also greatly increases their risk of identity theft.

68.    With a merged file, wherein Equifax and Trans Union assume two different consumers are the same person and entitled to one file, the data pertaining to both of those consumers are comingled and piled into a single file, forcing two consumers to share a file unbeknownst to them. In this scenario, at times, Equifax and Trans Union will refuse to sell a consumer report to a third party in response to a consumer application for credit or otherwise, thereby frustrating that consumer's access to credit. Or Equifax and Trans Union will sell a consumer report reflecting the data pertaining to both consumers.

## The "Mixed File" Problem is Known to Equifax and Trans Union

69.    Mixed files are not a new phenomenon. In fact, as long ago as the early 1990s, the Federal Trade Commission ("FTC") (the government agency charged with enforcement of the FCRA), entered into individual Consent Decrees with each of the major CRAs, specifically including Experian, regarding their significant failures and deficiencies with respect to mixed files.

70.    Equifax and Trans Union mixes files even though every consumer has unique personal identifying information, such as a Social Security number. That is so because Equifax and Trans Union's system allows information to be included in a

COMPLAINT AND DEMAND FOR JURY TRIAL

consumer's file when the Social Security number reported with the information is different from the Social Security number on the consumer's file.

71. Equifax and Trans Union knows that its matching procedures are causing inaccurate consumer reports, consumer disclosures, mixed files and merged files.

72. Despite Equifax and Trans Union's long-standing and specific knowledge of the mixed and merged file problem, Equifax and Trans Union still mixed and/or merged Plaintiff's files with that of another consumer.

73. A mixed or merged credit files is the result of Equifax and Trans Union's inaccurately mixing personal identifying information and credit information and/or an entire credit file belonging to one consumer into the credit files of another consumer.

74. There are many different possible causes for the mixing of credit files but all of them relate in one way or another to the algorithms and/or database rules used by Equifax and Trans Union to match personal identifying information and credit information, including public record information, to a particular consumers' credit file.

75. The success or failure of these algorithms or rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to Equifax and Trans Union.

76.     A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal "indicative" information (e.g., name, Social Security number, ITIN, address, date of birth, etc.) by the furnishers to Equifax and Trans Union.

77.     Accordingly, the database rules determine which credit files are selected by the algorithm and merged to create a complete consumer report.

78.     Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

79.     In the 1990's, the Federal Trade Commission ("FTC") sued Equifax and Trans Union because of their failure to comply with the FCRA including the mixing of consumers' files.

80.     In the 1990's, the Attorneys General of numerous states sued Equifax and Trans Union because of their failure to comply with the FCRA including the mixing of consumers' files.

81.     In 1992, Trans Union signed a Consent Order with the Attorneys General of 17 states. Trans Union agreed that it would maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files. For example, procedures during the reinvestigation process include, assigning mixed file cases to Senior Investigators who, as appropriate, must pull all files related to the consumer, fully verify disputed information, make any changes, deletions or additions to correct

the file and resolve the dispute, and prepare a summary of the problem to be filed with another department for corrective action.

82.     In 1992, Equifax signed an Agreement of Assurances with the State Attorneys General and agreed to take specific steps to prevent the occurrence of mixed files and to adopt procedures designed specifically to reinvestigate consumer disputes resulting from mixed files.

83.     In 1995, Equifax signed a Consent Order with the FTC. Equifax agreed it would follow reasonable procedures to assure the maximum possible accuracy of the information on a consumer's file including, but not limited to, procedures to detect logical errors prior to reporting information on a consumer's file, procedures to prevent mixing as a result of data entry by third parties when the third party requests a consumer's report, and procedures during a reinvestigation specifically designed to resolve consumer disputes related to a mixed file.

84.     To prevent the occurrence of a mixed file, Equifax and Trans Union entered into agreements not to place information in a consumer's file (other than certain public record information) unless they have identified such information by at least two of the following identifiers: (i) the Consumer's name; (ii) the Consumer's Social Security number; (iii) the Consumer's date of birth, or (iv) the Consumer's account number with a Subscriber or a similar identifier unique to the Consumer.

85.     Equifax and Trans Union continue to repeatedly mix consumers' files despite agreements with the FTC and State Attorneys General and hundreds of lawsuits filed against them by consumers whose files have been mixed.

86.     When those lawsuits have gone to trial, juries have found that Equifax and Trans Union, willfully violated the accuracy and reinvestigation requirements of the FCRA - §§ 1681e(b) and 1681i – and awarded punitive damages as high as $18 million.  Yet the "mixed file" problem continues.

87.     For example, in 2015, the New York Attorney General filed charges and settled claims with Equifax and Trans Union over mixed files.  *See In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC.*

88.     Equifax's matching logic mixed two consumers' files when only seven out of the nine digits of the two consumers' Social Security numbers matched. *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1224 (D.N.M. 2006).

89.     In 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case NO. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them despite Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000.00 in actual damages and $5,000,000.00 in punitive damages.

Despite the verdict, Defendant Equifax and Trans Union continue to mix consumers' credit files with other consumers' credit files.

90. In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $219,000.00 in actual damages and $2,700,000.00 in punitive damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes. Despite the verdict, Equifax and Trans Union continue to mix consumers' credit files with other consumers' credit files.

91. In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000.00 in actual damages and more than $18,000,000.00 in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Miller' numerous disputes. Despite the verdict, Equifax and Trans Union continue to mix consumers' credit files with other consumers' credit files.

92. More recently, a jury assessed a $60 million dollar verdict against Trans Union for mixing innocent persons as terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone. *See Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017), aff'd in part, vacated in part,

rev'd in part sub nom. *Ramirez v. TransUnion, LLC*, 951 F.3d 1008 (9th Cir. 20020).

Despite the verdict, Equifax and Trans Union continue to mix consumers' credit files

with other consumers' credit files.

93.     Equifax and Trans Union has been sued thousands of times wherein an

allegation was made that they violated the FCRA.

94.     FCRA lawsuits have resulted in multi-million-dollar verdicts for

consumers who fall victim to a mixed credit file.

95.     "Evidence that a defendant has repeatedly engaged in prohibited

conduct while knowing or suspecting that it was unlawful would provide relevant

support for an argument that strong evidence is required to cure the defendant's

disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that

whether "other consumers have lodged complaints similar to Dalton's against CAI"

is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with

statutory duties can establish that the defendant acted willfully. *See Safeco Ins. Co.

of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on

"reckless disregard for a statutory duty").

96.     No less than three federal Courts of Appeal have held a consumer

reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully

violated the FCRA when it mixes a consumer's file with another consumer.

97.     Notably, the Federal Trade Commission has specifically warned

consumer reporting agencies to review their procedures when a mixed file occurs.

98. Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

**Plaintiff's Inaccurate Consumer Reports**

99. Plaintiff Moua Tao Cha has an identical twin brother named Moua Yeng Chao.

100. Plaintiff and his brother have the same date of birth.

101. Plaintiff and his brother share a similar name.

102. Plaintiff and his brother reside at the same address.

103. Plaintiff and his brother have distinct social security y numbers, which differ by one digit.

104. In or around 2024, Plaintiff learned that accounts and inquiries belonging to his brother were reporting on his credit reports.

105. In or around 2024, Plaintiff submitted one or more dispute(s) regarding the inaccurate information to both Equifax and Trans Union.

106. However, Defendants Equifax and Trans Union failed to investigate and remove the inaccurate information from Plaintiff's credit file.

107. Each time Plaintiff disputed, Equifax and Trans Union refused to remove the information that belonged to Plaintiff's brother from his credit file.

108. As such, Plaintiff felt hopeless and stopped disputing with the hopes that the issue would correct itself with time.

109.   In or around 2025, Plaintiff wanted to get a new vehicle, however, the inaccurate information was impacting his credit worthiness.

110.   As such, Plaintiff proceeded to dispute the information belonging to his brother once again.

111.   In or around April 2025, June 2025 and September 2025 Plaintiff sent a dispute letters to Equifax and Trans Union.

112.   The dispute letters indicated that Plaintiff was disputing a Capital One / Cabelas account (#xxxx8889) and a Capital One bank account (#xxxx7235).

113.   The dispute letters indicated that the accounts did not belong to him and that Plaintiff believed they belonged to his twin brother, who has a name very similar to his.

114.   Plaintiff provided his full name, his date of birth, address, social security number, his brother's name, a copy of Plaintiff's photo ID, a copy of his social security card and a copy of Plaintiff's bank statement reflecting his name and address.

115.   Upon information and belief, Defendant Equifax received Plaintiff's dispute letters.

116.   Upon information and belief, Defendant Trans Union received Plaintiff's dispute letters.

117.   Upon information and belief, Defendant Equifax forwarded Plaintiff's dispute letters and supporting documents to Capital One, as required under 15 U.S.C. § 1681i(a)(2).

118. Upon information and belief, Defendant Trans Union forwarded Plaintiff's dispute letters and supporting documents to Capital One, as required under 15 U.S.C. § 1681i(a)(2).

119. Despite receiving Plaintiff's disputes and documentation, Defendants failed to correct the inaccurate information.

120. Plaintiff believed that the inaccurate information would be corrected.

121. Instead, Defendants continued to report inaccurate credit information belonging to Plaintiff's brother.

122. The inaccurate reporting by Defendants caused Plaintiff's credit score to decrease by approximately 150 points.

123. Defendant Equifax did not investigate Plaintiff's disputes, and pursuant to their unreasonable procedures, merely forwarded an automated dispute to Capital One, despite possessing information indicating that the Capital One accounts belonged to Plaintiff's twin brother.

124. Defendant Trans Union did not investigate Plaintiff's disputes, and pursuant to their unreasonable procedures, merely forwarded an automated dispute to Capital One, despite possessing information indicating that the Capital One accounts belonged to Plaintiff's twin brother.

125. Rather than perform a reasonable investigation based on Plaintiff's dispute and rely on information known by Defendants Equifax and Trans Union through Plaintiff's credit file, Equifax and Trans Union merely parroted information

parroted information by Capital One despite awareness that the information was factually inaccurate, misleading and conflicted with information known by them.

126. Further, Defendant Capital One failed to conduct a reasonable investigation after receiving notice of Plaintiff's disputes from Equifax and Trans Union.

127. Defendant Capital One failed, among other things, to review all relevant information regarding the dispute or ignored this information. Consequently, Defendant Capital One continued to furnish inaccurate data to Equifax and Trans Union despite knowledge of Plaintiff's disputes and otherwise possessing information from which Defendant Capital One should have reported accurate information about the Capital One Accounts.

128. Defendants Equifax and Trans Union reporting was patently false and/or materially misleading, as Plaintiff never opened the Capital One accounts at issue and they did not belong to him.

129. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

130. At all times pertinent hereto, Defendants' conduct, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless,

grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

131.   Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, Defendants violations of the FCRA are willful.

132.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; credit denial; detriment to his credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment and having another consumer's derogatory information included into Plaintiff's credit files.

## <u>COUNT I</u>
**Defendants Equifax and Trans Union**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

133.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

134.   The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it
> shall follow reasonable procedures to assure ***maximum possible***

*accuracy* of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

135. On at least one occasion, Defendants prepared patently false consumer reports concerning Plaintiff.

136. Defendants mixed another consumer's personal and credit account information into Plaintiff's credit file, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

137. Defendants did not "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the reports relates." 15 U.S. Code § 1681e(b)

138. Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information they published and maintained concerning Plaintiff.

139. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the damage by loss of credit; credit denial; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment and having another consumer's derogatory information included into Plaintiff's credit files.

140. Defendants' conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

141. Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT II
### Defendants Equifax and Trans Union
### (Violations of the 15 U.S. Code § 1681i *et seq.*)

142. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though full stated herein.

143. When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

144. When conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

145. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its

receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

146. Defendants' violations of 15 U.S.C. § 1681i include, but are not limited to the following:

    i.   Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

    ii.   Failing to consider all relevant information while investigating Plaintiff's disputes.

    iii.   Failing to include all relevant information when notifying Capital One of Plaintiff's disputes.

147. Instead of reasonably reinvestigating Plaintiff's disputes, Defendant "verified" the Capital One accounts as accurate and continued to report it with a late payment history.

148. Defendants' conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

149. Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

150. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the damage by loss of credit; credit denial; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment and having another consumer's derogatory information included into Plaintiff's credit files.

## COUNT III
### Defendant Capital One
### (Violations of the 15 U.S. Code § 1681s2(b) *et seq.*)

151. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

152. Defendant violated 1681-s2(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff when preparing a consumer credit report.

153. Defendant violated 1681-s2(b) because after receiving notice of a dispute under 1681i(a)(2), the furnisher (Capital One) must:

    i. (A) Conduct an investigation with respect to the disputed information;

    ii. (B) Review all relevant information provided by the CRA;

    iii. (C) Report the results of the investigation to the CRA;

iv.    (D) If the investigation finds the information to be incomplete or inaccurate, report those results to all CRAs to whom the information was furnished;

v.    (E) If information is found to be inaccurate or incomplete or cannot be verified:

    (1) Modify, delete, or permanently block the reporting of that information, as appropriate.

    (2) These steps must be completed within 30 days of receiving the dispute (with some exceptions for extended timeframes).

154.    When Defendant Capital One reported back to the CRAs Equifax and Trans Union, it notified them that this report was indeed accurate as according to the information received by the Plaintiff.

155.    Had Defendant Capital One conducted a reasonable investigation, it would've realized that the Capital One accounts did not belong to the Plaintiff but to his twin brother.

## **TRIAL BY JURY**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against Defendants for the following:

COMPLAINT AND DEMAND FOR JURY TRIAL

A. Actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

B. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

C. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

E. Any pre-judgment and post-judgment interest as may be allowed under the law; and

F. Other and further relief as the Court may deem just and proper.


Respectfully submitted this on December 30th, 2025.



*/s/ Youssef H. Hammoud*
Youssef H. Hammoud (SBN: 321934)
**THE CREDIT ATTORNEY, INC.**
601 N Parkcenter Drive Suite 202
Santa Ana, CA 92705
T: (949) 301-9692
F: (949) 301-9693
E: yhammoud@thecreditattorney.com

*Attorney for Plaintiff,*
*Moua Tao Cha*